## W. G. LANGFORD, RESPONDENT, v. C. E. MONTEITH, APPELLANT.

NEZ PERCE INDIANS—RESERVATION—TREATY.—The treaty between the United States and the Nez Perce tribe of Indians, concluded June 9, 1863, proclaimed April 20, 1867, reserved for the sole use and occupation of said tribe, the territory, or tract of country therein described.

IDEM—SETTLERS UPON THAT RESERVATION ARE TRESPASSERS.—Settlers upon the reservation granted by treaty to the Nez Perce Indians and all

others, except such as are permitted by the treaty, who go thereon to occupy or possess any portion of the land embraced therein, are trespassers. No agreement for the use and occupancy of any portion of said land between the plaintiff and another white person, can be enforced.

APPEAL from the first judicial district, Nez Perce county. On the fifteenth day of February, 1875, the plaintiff commenced an action before a justice of the peace, as landlord, against the defendant, as his tenant, for holding over lands within the Nez Perce Indian reservation, contrary to the terms of a lease previously entered into between plaintiff and defendant. The action was commenced and prosecuted under that provision of the civil practice act relating to forcible entry and detainer. The cause was removed from the justice's court to the district court of the first judicial district, Nez Perce county, where judgment was rendered in favor of the plaintiff. Defendant appealed.

*Huston & Gray*, for the appellant.

*Brumback & Cahalan*, for the respondent.

CLARK, J., delivered the opinion. HOLLISTER, C. J., concurred.

From the pleadings, judgment, and admissions of counsel for the respective parties made in this court, it is shown, that the premises described in the complaint, lease, and judgment, are situated within the Nez Perce Indian reservation; hence our inquiries are directed to an examination of the several treaties between the United States and the Nez Perce tribe of Indians for the purpose of ascertaining what rights and privileges the respondent had, if any, to land and tenements situated as aforesaid, and the further purpose of ascertaining whether, or not, the action of forcible detainer could be maintained between white persons for lands and tenements which are made a part of an Indian reservation by treaty with the United States, and reserved to the sole use and occupation of Indians.

The treaty between the United States and the Nez Perce tribe of Indians, concluded June 9, 1863, proclaimed April 20, 1867 (14 U. S. Stat.), was made in the valley of

the Lapwai, Washington territory, as appears by the preamble to said treaty. This territory was not created at the date of said treaty, but afterwards, and when created, included said Lapwai valley within its limits. The treaty mentions the Lapwai and shows it to be within the reservation; hence we conclude that Lapwai creek, mentioned in the complaint, lease, and judgment, and Lapwai, mentioned in the treaty, are one and the same place. Article 1 of said treaty provides, that the Nez Perce tribe of Indians relinquish, and do thereby relinquish to the United States, the land reserved for the use and occupation of said tribe under the treaty of 1855, saving and excepting so much thereof as is described in article 2 of the said treaty of June 9, 1863.

Article 2 of the treaty of June 9, 1863, reserves for the home and for the sole use and occupation of said tribe the tract of land included within the following boundaries, to wit: Commencing at the north-east corner of Lake Waha and running thence northerly to a point on the north bank of the Clearwater river, three miles below the mouth of the Lapwai, thence down the north bank of the Clearwater to the mouth of Hatwai creek, thence due north to a point seven miles distant, thence eastwardly to · a point on the north fork of the Clearwater seven miles distant from its mouth, thence to a point on Oro Fino creek five miles above its mouth, thence to a point on the north fork of the south fork of the Clearwater · five miles above its mouth, thence to a point on the south fork of the Clearwater one mile above the bridge on the road leading to Elk city (so as to include all the Indian farms now within the forks), thence in a straight line westerly to the place of beginning. This description shows the premises mentioned in this action to be within the reservation.

Article 3 of said treaty of June 9, 1863, provides that the president cause boundary lines to be marked and lands within the reservation surveyed into lots for the purpose of dividing the land among the heads of Indian families for ther use and benefit; article 3 further provides that such tracts shall be exempt from levy, taxation, or sale, and shall be alienable in fee, or leased, or otherwise disposed of,

only to the United States, or to persons then being members of the Nez Perce tribe and of Indian blood, with permission of the president, and under such regulations as the secretary of the interior or the commissioner of Indian affairs shall prescribe.    Article 4 of the treaty provides for the payment to the tribe for the relinquishment of land to the United States under this treaty.

This treaty provides for the erection of churches, schools, hospital, blacksmith-shop, houses, and mills, for the use and benefit of the tribe; also provides that the United States employ teachers, matrons, mechanics, and millers, to operate the several establishments mentioned.    It further provides that the United States is the only competent authority to declare and establish roads and highways, and that no other right is intended to be granted to the citizens of the United States than the right of way over such roads or highways; that upon such roads there may be established, at such points as may be necessary for the public convenience, hotel or stage stands, under license from the agent or superintendent.    It is further provided that the ferries and bridges shall be held and managed for the benefit of the Indians.

Under the tenth article of the treaty of June 11, 1855, it is provided that certain land described in William Craig's notice to the register of the land-office of the territory of Washington, shall not be considered a part of this reservation, except that it be subject to the operations of the intercourse act.    This land is the only land within the boundaries of the Nez Perce reservation not included and made a part of the land reserved for the sole use and occupation of the tribe.    There are no reservations or exceptions in favor of any other person or persons than William Craig.    No "mission claim" is mentioned in said treaties, but, on the contrary, all land is reserved to the sole use and occupation of the Indians, except the land of Craig.

Under the provisions of the treaties white persons are not allowed upon the reservations, except they be in the employ of the United States, or keepers of road stations, or ferries, as provided by treaty, all of such persons being

under the control and direction of the United States Indian agent. The plaintiff in this action does not show that he is in any way or manner entitled to the use or occupation of any land within the reservation.

It is provided by section 2118 of the revised statutes of the United States, that every person who makes a settlement on any lands belonging, secured, or granted by treaty with United States to any Indian tribe, or survey, or attempt to survey such land or designate any of the boundaries by marking trees or otherwise, is liable to a penalty of one thousand dollars. The president may moreover take such measures, and employ such military force as he may judge necessary to remove any such persons from the lands.

From the foregoing treaty stipulations, and the law above cited, we must conclude that the plaintiff in this action was a trespasser upon the Nez Perce Indian reservation, and not entitled to the use or occupation of any land therein, that any lease or agreement made between him and any white person for the use or occupation of the reservation land was void *ab initio*, and that courts of law have no power to restore possession of any premises or land leased as aforesaid. Article VI. of the constitution of the United States provides as follows, to wit: "This constitution and the laws of the United States, which shall be made in pursuance thereof, and all treaties made, or which shall be made, under authority of the United States, shall be the supreme law of the land, and the judges in every state shall be bound thereby, anything in the constitution or laws of any state to the contrary notwithstanding."

Chief Justice Marshal in *Worcester* v. *The State of Georgia*, 6 Pet. (U. S.) says, that the Indian natives had always been considered as distinct, independent political communities, retaining their original natural rights as the undisputed possessors of the soil from time immemorial, with the single exception of that imposed by irresistible power which excluded them from intercourse with any other European potentate than the first discoverer of the coast of the particular region claimed; and this was a restriction which

those European potentates imposed on themselves, as well as on the Indians. The very term "nation," so generally applied to them, means "a people distinct from others." The constitution, by declaring treaties already made, as well as those to be made, to be the supreme law of the land, has adopted and sanctioned the previous treaties with the Indian nations, and consequently admits their rank among the powers who are capable of making treaties. The words "treaty" and "nation" are words of our own language selected in our diplomatic and legislative proceedings by ourselves, having each a definite and well-understood meaning. We have applied them to Indians, as we have applied them to the other nations of the earth. They are applied to all in the same sense.

We are compelled to come to the conclusion above stated, that plaintiff in this action was a trespasser upon the Nez Perce reservation, without any right whatever to enter into contracts for the use and occupation of Indian land reserved under treaty, and that if he did make such agreements, the same could not be enforced in the courts of this territory, for the reason that the Indians had the sole right to use and occupy such land, or premises, and the courts were bound to protect them in the same.

It is therefore ordered that the judgment of the court below be reversed and the action dismissed, and that appellant have judgment for his costs in this behalf.